Thomas HAUSAM, Plaintiff–Appellant,

v.

PUBLIC UTILITIES COMMISSION OF the STATE OF COLORADO and the Mountain States Telephone and Telegraph Company, Defendants–Appellees. (Two Cases)

Nos. 85SA27, 86SA423.

Supreme Court of Colorado,
En Banc.

March 7, 1988.
As Modified on Denial of Rehearing March 28, 1988.

William C. Danks, Denver, for plaintiff-appellant.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Mark A. Davidson, Asst. Atty. Gen., Eugene C. Cavaliere, Deputy Atty. Gen., Denver, for defendant-appellee Public Utilities Com'n, of the State of Colo.

Russell P. Rowe, Coleman M. Connolly, Linnea Mitchell Simons, Denver, for defendant-appellee The Mountain States Tel. and Tele. Co.

ROVIRA, Justice.

In 1983, Mountain States Telephone and Telegraph Company (Mountain Bell) submitted three applications for rate increases to the Public Utilities Commission of Colorado (Commission). During subsequent proceedings, Thomas Hausam (Hausam) sought to challenge $33 million of the rates requested. The Commission denied Hausam's challenges, after which he sought review of its decisions in two appeals to the district court. The district court, in turn, ruled against Hausam in both cases. We affirm.

## I.

The proceedings at issue arose out of three advice letters Mountain Bell filed with the Commission on November 28, 1983. Advice Letter No. 1930 requested $51 million in charges to other telephone companies who used Mountain Bell's facilities to provide certain long distance services. Advice Letter No. 1932 sought a $33 million emergency interim rate increase in charges for its products and services. Advice Letter No. 1931 sought a total of $151 million in charges, which included the rates requested in Advice Letters 1932.

On the same day that it filed the three advice letters, Mountain Bell filed a verified motion for temporary and emergency rates and a verified statement of position requesting that the rates associated with Advice Letters 1930 and 1932 be permitted to go into effect on January 1, 1984, even if the Commission decided to investigate those rate requests and set them for hearing.[1]

On December 6, 1983, the Commission suspended the rates sought in Advice Letter No. 1931 and assigned that tariff to Investigation and Suspension Docket No. 1655 for hearing. The Commission decided not to accept Mountain Bell's proposal for handling Advice Letters 1930 and 1932, but instead entered into discussions with Mountain Bell and other interested parties to determine the best method of proceeding. Those discussions produced an agreement under which the Commission assigned Advice Letters 1930 and 1932 to its complaint docket as Case No. 6360 and Case No. 6361, respectively, and did not suspend the tariffs but instead allowed them to become effective by operation of law on January 1, 1984. Mountain Bell, for its part, agreed to assume the burden of proving that the proposed rates were just and reasonable, and further agreed to accept refund liability for any charges it collected which subsequently were determined to be unjustified.[2] In Decision No. C84–27, issued January 4, 1984, the Commission consolidated Cases 6360 and 6361 with Investigation and Suspension Docket No. 1655. In addition, the order outlined Mountain Bell's obligations as summarized above.

The Commission held hearings on the consolidated cases in March, April, and May of 1984. Mountain Bell discovered during those hearings that problems in establishing the reasonableness of the tariffs might prove insurmountable. As a consequence, it proposed first, to withdraw the $151 million increase sought in Advice Letter No. 1931, and second, that Cases 6360 and 6361 be severed from Investigation and Suspension Docket No. 1655 for later hearing. The Commission approved the proposal on May 22, 1984, in Decision C84–587. Accordingly, it closed Investigation and Suspension Docket No. 1655, severed Cases 6360 and 6361 from Investigation and Suspension Docket No. 1655, ordered that further hearings be set by subsequent order, and that motions for attorney fees and expert witness fees be filed by June 11, 1984. On August 15, 1984, by Decision C84–897, the Commission granted attorney and witness fees to three parties for their

---

1. When the Commission orders a hearing on new rate requests, the rates are ordinarily suspended automatically for up to 120 days pending the Commission's final approval or denial of the tariff. § 40–6–111(1)(b), 17 C.R.S. (1984). The Commission may, in its discretion, suspend the rates for an additional 90 days if no final decision is entered within the first 120 days. *Id.*

2. A tariff which becomes effective by operation of law is subject to the Commission's review upon the filing of a complaint by a third party. § 40–6–108(1)(a), 17 C.R.S. (1984). In such cases, the party who challenges the tariff bears the burden of proving that the rate is improper. *Public Utilities Comm'n v. District Court,* 186 Colo. 278, 283, 527 P.2d 233, 235 (1974). When the Commission chooses to set a rate request for

hearing on its own motion, however, the utility bears the burden of proving that the proposed rates are reasonable. *Id.* at 283, 527 P.2d at 235.

By assuming the burden of proof in subsequent hearings and maintaining its refund liability with respect to the rates requested in Advice Letters 1930 and 1932, Mountain Bell was left in approximately the same position it would have found itself had the Commission initially chosen to order a hearing on those two tariffs. The primary difference between the procedure followed in this case and the statutory procedure was that, in this case, the proposed rates were not automatically suspended for the 120–day period required by section 40–6–111(1)(b).

participation in the consolidated hearing that concluded in May.

On September 4, 1984, Hausam, in a pleading entitled "Petition for Intervention and Application for Reconsideration," sought to intervene in Investigation and Suspension Docket No. 1655 and Cases 6360 and 6361. He also requested the Commission to order Mountain Bell to cease charging the rates requested in Advice Letter 1932 (the $33 million emergency interim rate increase) and to refund any money collected under the emergency rate increase to its customers.[3]

The Commission entered Decision C84–1119 on October 2, 1984, granting Hausam leave to intervene in Cases 6360 and 6361 "so long as he takes [the] cases as he finds them at the time of intervention." Because the emergency rate increase to which Hausam objected was subject to an ongoing case (No. 6361) which had not been finally resolved, the Commission struck Hausam's petition for reconsideration as premature. In the same decision, the Commission denied Hausam leave to intervene in Investigation and Suspension Docket No. 1655 because that case had already been closed. Because Hausam was not accorded status as a party to Docket No. 1655, the Commission found that he had no standing to request reconsideration of Decision C84–897.[4]

Hausam sought review of the Commission's various decisions through that point in district court. The district court dismissed Hausam's action for lack of jurisdiction, and Hausam's appeal of that order to this court has been assigned Case No. 85SA27.

## II.

In Investigation and Suspension Docket No. 1575, a separate proceeding not challenged in these cases, the Commission determined that Mountain Bell was authorized to earn a rate of return of 11.93 percent in 1984. Thus, when Cases 6360 and 6361 were finally set for hearing by Commission Decision C85–1353 (dated October 29, 1985), the Commission ordered that:

> The hearing on December 16, 1985 will be limited strictly to the issue of whether the Mountain States Telephone and Telegraph Company during 1984 earned more than its authorized rate of return of 11.93 percent set in Investigation and Suspension Docket No. 1575.

Hausam did not seek reconsideration of Decision C85–1353.

On the day of the hearing, Hausam filed a motion for final decision and motion to order a refund. He again asserted that the initial procedures which resulted in the emergency rate increase were illegal, and that Mountain Bell was required to refund the $33 million increase after it withdrew its general rate application in Investigation and Suspension Docket No. 1655.

On April 25, 1986, a Commission hearing officer recommended, in part, that the $33 million emergency rate increase be approved and that Hausam's motion for a refund be denied. Hausam filed timely exceptions to the recommendations. On July 1, 1986, the Commission denied Hausam's exceptions and approved the $33 million emergency interim rate increase by

---

**3.** Hausam argued, as others have argued before, that the Commission does not have the authority "to allow rates to go into effect without a hearing subject to refund if they are later determined to be improper." *Public Service Co. v. Public Utilities Comm'n,* 653 P.2d 1117, 1119 (Colo.1982). We declined to address the issue in *Public Service Co.,* and in light of our resolution of this case on procedural grounds, we decline to address the issue here.

In addition, Hausam argued that the notice which Mountain Bell mailed to its customers informing them of the proposed rate increases required that Mountain Bell refund the $33 million emergency interim rate increase as soon as it withdrew its $151 million general rate increase. Again, our disposition of these appeals renders it unnecessary for us to address that argument.

Although we discuss the procedural history of Cases 6360 and 6361 together because they were consolidated, Hausam only challenged the $33 million rate requested in Case 6361.

**4.** The Commission denied Hausam's request for a refund of the $33 million emergency increase "because the merits of the refund of the emergency increase and all other matters relevant thereto will be considered in Case Nos. 6360 and 6361." Commission Decision C84–1119.

Decision C86–820. The Commission entered its final order in Cases 6360 and 6361 on July 29, 1986, Decision C86–957, and denied Hausam's application for rehearing, reargument, and reconsideration of its July 1 decision.

Hausam subsequently sought review of the Commission's final decision before the district court. The district court found that the procedures the Commission followed were within its authority in light of *Public Service Company v. Public Utilities Commission*, 653 P.2d 1117, 1119 (Colo.1982), and finding no disputed issues of fact, denied Hausam's motion for summary judgment and granted Mountain Bell's similar motion. Hausam's appeal of that judgment to this court has been assigned Case No. 86SA423.

### III.

We begin our analysis by noting that in Decision C84–1119, the Commission denied intervenor status to Hausam with respect to Investigation and Suspension Docket No. 1655 and conditioned his intervention in Cases 6360 and 6361 on his accepting the record as it stood at the time of his petition. Hausam did not contest Decision C84–1119 before the Commission, nor has he contested its validity before this court. We therefore accept the Commission's order concerning Hausam's intervention and will give effect to the conditions it imposed.

### A.

■ Case No. 85SA27 involves Hausam's challenges to Commission Decisions C84–27, C84–587, and C84–897.[5] Decision C84–897 was the Commission's order with respect to attorney and witness fees for the various objectors' participation in the consolidated hearing on Investigation and Suspension Docket No. 1655 and Cases 6360 and 6361. The Commission, having denied Hausam intervenor status with respect to

Investigation and Suspension Docket No. 1655, because that proceeding had been terminated on May 22, 1984, properly found that Hausam did not have standing to petition for reconsideration of Decision C84–897 as it applied to that case and therefore struck the petition. In addition, the Commission apparently interpreted Hausam's challenge to Decision C84–897 as a request that the rate application involved in Case 6361 be denied. Because the Commission had neither approved nor denied the rate increase sought in Case 6361, however, Hausam's challenge to Decision C84–897 as it applied to that case was indeed premature and the Commission properly struck the petition.

■ With respect to Decision C84–587, which severed Cases 6360 and 6361 from Investigation and Suspension Docket No. 1655 and set them for later hearing, the basis for Hausam's challenge was not that the rate increase was unjustified or unreasonable, but rather that the Commission's decision to allow the rates requested in Case 6361 to become effective, subject to later determination of their reasonableness, and possible refund, was illegal. Hausam also intended, apparently, to attack Commission Decision C84–27, which instituted the subsequent proceeding and which permitted the $33 million increase to become effective by operation of law on January 1, 1984.

Hausam's petition was not timely, however, to the extent it was intended to challenge either Decision C84–27 or C84–587. Section 40–6–114(1), 17 C.R.S. (1984), requires that petitions for reconsideration, reargument, or rehearing be filed with the Commission no later than twenty days following the decision of the Commission. The twenty-day periods following Decisions C84–27 and C84–587 had both expired long before Hausam's petition for intervention and reconsideration was filed, and the Com-

---

5. Hausam's September 1984 petition for reconsideration did not specify the decisions he intended to challenge, and as noted below, the Commission interpreted the application as seeking review only of Decision C84–897. In the subsequent district court action, however, Hausam specifically identified Decisions C84–897

and C84–587 as those he was challenging as incorrect. He also challenged—implicitly—Decision C84–27, which set Cases 6360 and 6361 for hearing and reviewed the procedures the Commission had followed in allowing the tariffs requested in Advice Letters 1930 and 1932 to become effective as a matter of law.

mission was therefore not compelled to consider his petition.

Moreover, the conditions on which Hausam's intervention was granted precluded his challenge to the procedures the Commission had chosen to follow and which it had ordered more than seven months before Hausam intervened. Hausam did not challenge the limitations on his intervention, and we may not now ignore those limitations to address, as Hausam requests, the propriety of Decisions C84–27 and C84–587.

We therefore affirm the judgment of the district court in Case No. 85SA27.

### B.

Case No. 86SA423 involves Hausam's challenges to the Commission's July 1, 1986, Decision C86–820, which approved the rates requested in Cases 6360 and 6361, and Decision C86–957, which denied Hausam's petition for reconsideration of Decision C86–820. As noted above, Hausam entered the litigation subject to the condition that he take Cases 6360 and 6361 as he found them. At the time Hausam entered the litigation, he was thus entitled to participate in the subsequent adjudication of the two cases, but he was not entitled to challenge the procedures adopted prior to his intervention.

We find that the disposition of this appeal is controlled by Commission Decision C85–1353, dated October 29, 1985, which limited the issue in the December 16, 1985 hearing to whether the charges Mountain Bell collected under the $33 million rate increase and $51 million new rate resulted in a rate of return in excess of that ordered by the Commission in Investigation and Suspension Docket No. 1575.[6]

Hausam did not challenge Decision C85–1353 either before the Commission or in his subsequent appeals. As a consequence,

Hausam waived any objection he may have had to the Commission's decision to limit the scope of the hearing, and the Commission's order was binding on Hausam. It would be grossly unfair to permit Hausam to broaden the issues at the hearing unilaterally—and without notice to the other parties—after those parties relied on the Commission's order in preparing for the hearing.

After Hausam was granted leave to intervene subject to the condition that he take the record as he found it, his further participation consisted of (1) filing a motion for final decision and motion to order a refund on the day of the hearing, (2) filing exceptions to the hearing officer's recommendations, and (3) filing an application for rehearing, reargument, and reconsideration of Decision C86–820. In the motion and application, and again in his exceptions to the hearing officer's recommendations, Hausam asserted that the terms of Mountain Bell's notice to consumers in 1983 compelled Mountain Bell to refund the $33 million rate increase it had collected, and further, that the Commission acted illegally in following the procedures as set out in Decisions C84–27 and C84–587.

Neither argument was relevant to the limited issue the Commission considered at the hearing. Because Hausam was bound by the Commission's order limiting the scope of the proceedings, the Commission properly denied Hausam's motion and application. We therefore affirm the judgment of the district court against Hausam in Case No. 86SA423.[7]

Accordingly, we affirm the decisions of the district court in Case Nos. 85SA27 and 86SA423.

---

6. We note that the Commission ordinarily has broad authority to limit the issues it will consider at rate hearings. *See Public Service Co. v. Public Utilities Comm'n,* 653 P.2d 1117, 1121 (Colo.1982).

7. The district court based its decision against Hausam on its finding that the Commission's

procedures in allowing the $33 million increase to become effective were proper. Because Hausam had effectively waived his right to challenge the propriety of those procedures, the district court need not have addressed the merits of Hausam's arguments. We therefore neither approve nor disapprove the court's ruling.